THE FIRST NATIONAL BANK OF KINGMAN v. JOSEPH GERSON, No. 6538.

1. ATTACHMENT — *Replevin* — *Property in Custodia Legis.* Where property has been attached in good faith, and subsequently taken from the officer on an order of replevin, it is *in custodia legis,* pending the result of the replevin suit, and not subject to a levy under further orders of attachment against the original judgment debtor; but where the attachment and replevin suits are collusively brought for the express purpose of placing the :property beyond the reach of creditors, such property is not in the custody of the law, but is subject to claims of attaching creditors acting in good faith for the purpose of securing their just demands. In this case R., having notes against G. & Co. for $712, and interest, attached property worth $5,000 or more. J. G., claiming under a void chattel mortgage, replevied such goods from the sheriff who held them under the attachment. *Held,* That this does not show a *bona fide* controversy between R. and the sheriff on the one hand, and J. G. on the other, over the title or right of possession to this property, in view of all of the other facts found in the record and stated in the opinion.

2. DRUGS — *Intoxicating Liquors* — *Void Chattel Mortgage.* A chattel mortgage on a stock of drugs, etc., which includes a large quantity of intoxicating liquors is void *in toto.*

*Error from Kingman District Court.*

ACTION by the *Bank* against *Gerson* and another to recover on a promissory note. Judgment for defendant. Plaintiff comes to this court. At the session in February, 1893, it was decided, and there was filed herein an opinion, (syllabus and opinion by STRANG, C.,) recommending an affirmance of the judgment of the court below. By the court, it was so ordered — all the justices concurring. The syllabus therein formulated and declared to be the law is as follows:

"Where property has been attached, and subsequently taken from the officer on an order of replevin, it is *in custodia legis,* pending the result of the replevin suit, and not subject to levy under further orders of attachment against the original attachment debtor."

In due time the plaintiff in error filed a motion for a re-

hearing. On April 8, 1893, the court sustained the motion, and filed herein a new syllabus, *supra*, and the opinion, *infra*.

*Hay & Hay*, for plaintiff in error.

*John E. Lydecker*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: This case was first heard before the commission, and at the February session an opinion was filed by Strang, commissioner. On the argument for a rehearing, our attention is directed to various matters which seem to have been overlooked, and, for a clear understanding of the case, it is necessary to state more fully and accurately the facts as they are shown by the record. This action was commenced in the district court of Kingman county on December 27, 1889, by the plaintiff against George Gerson & Co., for $300, on a note dated October 22, 1889, due in 60 days. An affidavit and bond for attachment were filed, and an attachment issued, and levied on a portion of the stock of merchandise of Gerson & Co. Thereafter, Joseph Gerson filed a motion to discharge said goods from attachment, claiming the same as mortgagee from George Gerson & Co. Joseph Gerson also claimed that these goods were not subject to attachment because of the following proceedings: That on December 17, 1889, an action was brought in the district court of Kingman county by George W. Rodgers *v.* George Gerson & Co., on two promissory notes, one dated July 29, 1889, due five months after date, for $500, executed by George Gerson and Isaac Levy, payable to order of Joseph Gerson, and the other dated July 13, 1889, due three months after date, for $212, signed by George Gerson & Co., also payable to the order of Joseph Gerson, both of these notes being indorsed by Joseph Gerson in blank. An affidavit for an attachment sworn to by George W. Rodgers was filed in that action, in which George Gerson & Co., it was alleged, were about to dispose of their property with intent to defraud, hinder and delay their creditors. An order of attachment was issued in that action, and

the whole stock of goods was levied on by the sheriff. On the same day Joseph Gerson commenced an action against the sheriff to recover the immediate possession of the goods. In his affidavit filed to obtain an order of replevin, he alleges that the stock of merchandise was worth $5,000. In his petition in that action he alleges that he is entitled to the posession of said goods under a chattel mortgage executed by George Gerson and Isaac Levy to him, dated November 26, 1889, given to secure two promissory notes for $1,600 each, both dated November 26, 1889, due, respectively, in three and six months from date, and bearing interest at the rate of 10 per cent. per annum, payable to the order of Joseph Gerson & Co. The chattel mortgage covers the entire stock of merchandise, consisting of drugs, patent medicines, toilet articles, paints, oils, liquors, cigars, glass, and stationery, perfumes, and all other goods, including fixtures, show cases, safes, etc.; also, soda fountain, generator, three copper founts, etc. A writ of replevin was issued, served by the coroner, and under that Joseph Gerson obtained possession of the entire stock, and he claims that by reason of these proceedings the property, became *in custodia legis*, and therefore not subject to attachment.

On the other hand, it is contended that these proceedings were collusive, and instituted and carried on by Rodgers on the one hand, and Gerson on the other, for the express purpose of withdrawing the entire property of George Gerson & Co. from the reach of their creditors. This claim is not considered or mentioned in the opinion heretofore filed. In order to fully understand the grounds of the plaintiff's claim in this respect, it is necessary to state some further facts. Joseph Gerson and George W. Rodgers both resided in the city of Newton, in Harvey county. The stock of goods in controversy in this action was kept in Kingman county. Joseph Gerson and George W. Rodgers both went from Newton to Kingman on the same train on December 17, 1889. The $500 note sued on by Rodgers had been discounted by the Citizens' Bank of Newton, of which Rodgers was the

cashier, and Rodgers, after it became due, and about the 27th of November, took the note up from the bank, as he testifies. Joseph Gerson, who indorsed both of these notes sued on by Rodgers, was, according to his own statement, worth from $50,000 to $75,000, and according to Rodgers' testimony was well off. Immediately on his arrival at Kingman, Rodgers went to the hotel, registered, left his overcoat, and from there went to the drug store of Gerson & Co. and demanded immediate payment of his note. He then went back to the hotel and got his dinner. After dinner he went to the store and saw a paper on the window, stating that the store had been closed under a chattel mortgage given to Joseph Gerson, and found the door locked. He says that was the first information he had that Joseph Gerson had a chattel mortgage. He then went in search of a lawyer, and in that search found the office of Lydecker & Cooper—Joseph Gerson's attorneys. They informed him that they were busy, but that they could refer him to an attorney in a few minutes who could serve him, and shortly thereafter John W. Cooper, a young attorney who stayed in the same office, came in and was introduced to Rodgers, and by Rodgers employed to commence the attachment suit. A replevin action was commenced almost simultaneously on the same day, and was brought by Lydecker & Cooper, as attorneys for Joseph Gerson. On the 26th day of November, 1889, being the same date as that of the chattel mortgage, Isaac Levy conveyed to Abram Cole, who resided also in Newton, and who was a son-in-law of Joseph Gerson, all of the real estate owned by Levy, and being all of the real estate of any considerable value owned by any member of the firm of George Gerson & Co.

Neither the deed nor the chattel mortgage was placed on record until the 17th of December, the date of these suits. Both of them were taken from Newton to Kingman by Joseph Gerson on that day, and filed for record. Charles Bucher, an attorney at Newton, testified that about the middle of July, 1889, Joseph Gerson called him into the store of A. Cole, in Newton, and said that times were a little close, and he did

not know just how business was going, and thought of taking in George's store at Kingman, and wanted to know the best way of standing the creditors of George off; that Joseph Gerson also asked him, if an attachment were levied upon the stock and then he should replevy, if any other judgments could be levied upon the goods after that; that he (Bucher) told Gerson that if that was what he wanted to do, that it was as good a way as any; and then added, that he (Gerson) ought not to do such business with his own son. Bucher was not employed by Gerson, nor paid for his counsel. These statements of Bucher are not denied. It is true that Rodgers and Joseph Gerson deny having any conversation with each other while or before going on the train about the business they were going on, and Joseph Gerson gave Rodgers a false reason for his trip, viz., that he was going to look at a farm. It appears clearly from the evidence, that in the stock of goods included in the mortgage there were intoxicating liquors of the value of $500 or $600. After the replevin suit, Rodgers gave no redelivery bond; and, if mere change from his testimony in the case repudiates the claim made in his affidavit, that Gerson & Co. were disposing of their property to defraud their creditors, he repudiated that claim. Rodgers's undertaking in attachment is signed by R. W. Hodgson, whose name also appears as a surety on Gerson's replevin bond. Rodgers testified as follows:

"Ques. On what facts did you act in procuring the attachment against Gerson & Co.? Ans. The fact that they owed me the money past due and did not pay it, and considered it best, on finding that the store had just been locked up under a chattel mortgage; it looked to me as though it were time I was looking out for myself.

"Q. You considered this chattel mortgage to Gerson as being a fraudulent business to defraud creditors? A. No, sir; I did not consider it any such thing.

"Q. Well, how did you consider it, if you considered it at all? A. Well, as far as that was concerned, the only thing that I took into consideration was this: that is, I saw there— I believe there was stock enough there, after paying Joseph Gerson's mortgage off, to pay me off.

"Q. How much was Joseph Gerson's mortgage? A. I did not know at that time; I have been told since it was, I believe, $3,000. I believe I heard it was.

"Q. If you did not know at that time, how did you consider that there was enough for both of you? A. I know that Joseph Gerson was slick enough not to loan money on goods unless he had good security. He always gets good security."

There are 14 cases pending in this court, brought by various attaching creditors, all depending on the same state of facts.

It has already been held by this court that a chattel mortgage upon intoxicating liquors is void, and that, where other property besides intoxicating liquors is included in the mortgage, that it is void *in toto*, both as to the liquors and as to the other property. (*Flersheim v. Cary*, 39 Kas. 179.) The foundation of Joseph Gerson's claim was therefore void.

It is contended that Joseph Gerson had obtained possession of the mortgaged property prior to the levy of the attachment, and that this cured the illegality in the mortgage; but in the replevin action Joseph Gerson claimed these goods, not because of a delivery to him as a pledge, but in his petition he bases his rights solely on this chattel mortgage. Probably an ill-founded claim prosecuted in good faith might be held sufficient to place the property in the custody of the law; but what did the undisputed facts in this case show? Gerson claims a stock of goods much in excess of the amount of his mortgage in value, under a mortgage void in law. George W. Rodgers, a friend of Gerson's, living at a considerable distance from the place where Geo. Gerson & Co. live, takes up two notes which had been originally given to Joseph Gerson, on which Joseph Gerson, a man of wealth, living in the same town, was indorser, and goes in company with Joseph Gerson to a town distant from his home, and there employs a lawyer from the same office occupied by Gerson's lawyers to commence an attachment suit, procures the same person as surety on his bond that Gerson has on his replevin bond, then attaches not merely a sufficient amount of

goods to satisfy his claim and costs, as a creditor acting in good faith would ordinarily do, but the entire stock of goods held by Gerson & Co., which the evidence shows to be worth somewhere from $5,000 to $6,500.

This court ordinarily will not weigh conflicting testimony, but where any evidence was before the trial court to sustain its findings, will uphold them. The undisputed facts in this case, as they appear in the record presented for our consideration, force us to the conclusion that this action was collusive. A *bona fide* controversy did not exist between Rodgers and Joseph Gerson, under which each party claimed this entire stock of goods in good faith. Rodgers's claim, on the one hand, was but for $712, interest, and costs, and Joseph Gerson's claim, even if legal and well founded, was but for $3,200. Upon the facts here presented, we must hold that these suits were collusive, and, therefore, the property was not in the custody of the law. Gerson's chattel mortgage being void for the reasons stated, of course affords no ground for discharging the attached property. It follows, therefore, that a rehearing should be granted, and that the order of the district court discharging the attached property must be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.